UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| KENNETH W. STEWARD, | : | Case No. 1:07-cv-1012 |
|---|---|---|
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 18-25) (ALJ's decision)).

**I.**

On May 18, 2005, Plaintiff filed an application for DIB, alleging a disability onset date of July 7, 2003, due to a seizure disorder, degenerative joint disease of both knees, degenerative joint disease of the lumbar spine, and mental impairments. (Tr. 60 and 19-

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

20). Upon denial of Plaintiff's claims on the state agency level, he requested a hearing *de novo* before an ALJ. Accordingly, the ALJ conducted a hearing on May 23, 2007, at which hearing Plaintiff appeared with counsel and testified. (Tr. 18). A vocational expert, William T. Cody, was also present and testified. (*Id*.)

On June 21, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 25). That decision became Defendant's final determination upon denial of review by the Appeals Council on October 16, 2007. (Tr. 5-8).

At the time of the hearing, Plaintiff was 44-years old with a high school education. (Tr. 18, 115). His past relevant work experience included work as a bulk mover, repo man/credit manager, precision hand sander, furniture rental/mover, janitor, and unloader/forklift operator. (Tr. 110-111). Plaintiff also served in the Army from 1982 through 1989. (Tr. 57).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has a seizure disorder, degenerative joint disease of both knees, and degenerative joint disease of the lumbar spine, impairments that are considered "severe" based on the requirements in the Regulations (20 CFR § 404.1520(c)).

> 4. These medically determinable impairments do not, either individually or in combination, meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the residual functional capacity set forth in the body of this decision.
>
> 7. The claimant's past relevant work as a credit manager, sander, and janitor did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565).
>
> 8. The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.
>
> 9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

(Tr. 24).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB. (Tr. 24).

On appeal, Plaintiff maintains that: (1) the ALJ erred in determining the severity of Plaintiff's mental condition; and (2) the ALJ erred in giving more weight to the non-examining physician than the treating physician. Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff asserts that the ALJ erred in determining the severity of his mental condition. The undersigned agrees.

On February 12, 2004, Plaintiff was evaluated by Dr. John Heideman, Psy.D., under contract by the Ohio Bureau of Disability Determination. (Tr. 227-239). Dr. Heideman conducted a clinical interview including mental status exam, administered a WAIS-III (IQ test), a Nelson-Denny Reading Test, and a Wechsler Memory Scale III, and reviewed medical records. After these examinations, Dr. Heideman reported that Plaintiff was diagnosed on Axis I with (296.34) Major Depressive Disorder, Recurrent, Moderate; on Axis II with Borderline Intellectual Functioning; and on Axis V was assigned a GAF Score of 53.[2] (Tr. 237-238). Specifically, Dr. Heideman stated that Plaintiff:

> "was a thin, brain-damaged, 41 year old male who fell off a scaffold in 1993[3] . . . was in a recovery hospital for three and a half years. He has regained his life, but not his livelihood.[4] Mr. Steward's ability to relate to others is moderately impaired by his cantankerous attitude and his poor communication skills . . . ability to understand, remember and follow instructions is moderately impaired by his verbal IQ of 79 . . .

---

[2]  A Global Assessment of Functioning ("GAF") of 53 to 55 reflects moderate symptoms or moderate difficulty with social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders at 34.

[3]  Plaintiff was on a scaffold inside a warehouse checking a security camera. He leaned back and the spring on his safety belt broke and he hit a concrete floor. (Tr. 228).

[4]  Plaintiff was in counseling for several years after his discharge from the hospital because he "went from being somebody to being nobody over night." (Tr. 229).

>                    ability to maintain attention, concentration, persistence and
>                    pace are moderately impaired by his wandering eyes during
>                    work-like tasks, . . . pace is sometimes too slow. His
>                    persistence is marginal . . . His ability to withstand stress of
>                    the workplace is markedly impaired by his short temper.
>                    He gets frustrated easily. He lets other people know that he
>                    is unhappy and he does so with a caustic attitude . . . This
>                    claimant is not considered to be reliable and retainable on
>                    most jobs at present."

(Doc. 238).

Dr. Heideman found that Plaintiff was unable to work due to his mental conditions. Similarly, the non-examining psychologist, Dr. Pawlarczyk, concluded that Plaintiff's psychological diagnoses was "severe impairments to a marked degree in several categories and that Plaintiff was generally credible." (Tr. 241-256).

Despite these findings, the ALJ found that "[a]lthough the record contains an evaluation in February 2004 showing moderate symptomology due to a depressive disorder and borderline intellectual functioning (Ex 9F), this picture does not continue longitudinally . . . the claimant's mental impairment is mild and does not significantly limit the claimant's . . . ability to do work activities." (Tr. 20). The ALJ based this opinion on a July 2005 report by Dale Seifert, M.S. Ed. (Tr. 312-316). Mr. Seifert's report concluded that: "[a] psychological evaluation in July, 2005 did not show a borderline level of intellectual functioning.[5] Mr. Seifert's diagnosis was "a dysthymic

---

    [5]   Although Mr. Seifert's limited testing purportedly did not show a borderline level of
intellectual functioning, IQ is a *lifelong* condition and is not subject to change. *Maresh v.
Barnhart*, 431 F.3d 1073, 1075 (8th Cir. 2005) ("a person's IQ is presumed to remain stable over
time in the absence of any evidence of a change in a claimant's intellectual functioning.");
*Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989) (ALJ may
assume claimant's IQ remained relatively constant in absence of evidence showing a change in
claimant's intelligence functioning). Therefore, Dr. Heideman's IQ evaluation is entitled to
deference. Moreover, the ALJ is not qualified to find that borderline intellectual functioning is
inconsistent with Plaintiff's work and school history.

disorder and claimant's [GAF] was 65 . . . indicative of some mild symptoms." (Tr. 20).

However, the ALJ failed to consider that Mr. Seifert's report was based on very little testing and examination. Dr. Heideman reviewed records, administered WAIS-III, WMS-III, and Nelson-Denny testing, and conducted a clinical interview, whereas Mr. Seifert only conducted a clinical interview.

Accordingly, the ALJ's reliance on Mr. Seifert's opinion to the exclusion of Dr. Heideman's opinion was clear error. Mr. Seifert only did a clinical interview and therefore his opinion does not constitute substantial evidence so as to overcome the properly supported opinion of Dr. Heideman and concurring opinion of Dr. Pawlarczyk. Even if the ALJ believed there were contradictory evidence set forth in the assessments of Dr. Heideman and Mr. Seifert, Dr. Heideman's RFC is more "supportable" as his opinion is supported by the laboratory findings of the psychological tests and is more "consistent with the record as a whole." 20 C.F.R. § 404.1527(d)(3), (4).

In reaching his determination, the ALJ also considered that Plaintiff had never had psychiatric treatment. (Tr. 20). However, the Sixth Circuit has held that although an individual "may have failed to seek psychiatric treatment for his mental condition, . . . it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Accordingly, upon careful review, the undersigned finds that the ALJ's determination that Plaintiff's mental impairment is "mild" is not supported by substantial evidence. Dr. Heideman's RFC and opinion that Plaintiff has severe mental impairments *is* supported by substantial evidence.

**B.**

For his second assignment of error, Plaintiff asserts that the ALJ erred in determining Plaintiff's RFC because the ALJ failed to give controlling weight to the examining physician's findings and, instead, placed great weight on the consultative physician's findings. (Doc. 9 at 1). The undersigned agrees.

The ALJ concluded that Plaintiff retained the functional capacity to perform a reduced range of light work with standing, walking, and sitting for six hours in an eight-hour day. (Tr. 23). Plaintiff was further restricted to occasional stair-climbing and ramp-climbing; he could occasionally balance and stoop. (*Id.*) Due to a history of seizures, Plaintiff could not work around hazards such as unprotected heights or unguarded moving machinery. (*Id.*)

Here, as outlined by Plaintiff, the record reflects:

Of the evaluators of record, there were two non-examining physicians who did record reviews: Dr. McCloud, orthopaedist, 6/8/04 (Tr. 257-262) and Teresita Cruz, M.D., pediatrician, 7/19/05 (Tr. 331-337). These physicians reviewed the medical information in the file at the time of their evaluation, but did not examine Plaintiff and did

not have access to later information.

Dr. Omoruyi did two evaluations for Clinton County Job and Family Services ("JFS"), on 10/24/05 (Tr. 353-357) and 4/25/07 (Tr. 450-452), both of which concluded that Plaintiff was disabled – due to post traumatic degenerative joint disease of both knees and lumbar spine, with standing/walking and sitting each limited to either .25 hour or .25 day, and with extremely limited bending/reaching and markedly limited repetitive foot movements. Nonetheless, the Defendant discredited Dr. Omoruyi's assessments as "not supported by appropriate medical evidence that appeared to be based on subjective complaints." (Tr. 22).

However, pursuant to 20 C.F.R.§ 404.1527(d)(1), Defendant must give more weight to the opinion of a source who has examined Plaintiff rather than to the opinion of a source who has not examined Plaintiff. "An examining physician's opinion is entitled to more weight than a non-examining source." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007); 20 C.F.R. § 404.1527(d)(1)-(2). Dr. McCloud and Dr. Cruz never examined Plaintiff, and their reports are inconsistent.

Furthermore, the JFS reports are *consistent* with detailed VA examinations done on August 30, 2006 by Kenneth E. Felkey, P-A, and Dr. James O. Armacost (Family Practice and Emergency Medicine), concluding that Plaintiff was unemployable due to his service-connected conditions of lumbar and knee disease.[6] (Tr. 423). Plaintiff claims the ALJ ignored the detailed examinations and evaluations by Mr. Felkey and

---

[6] Plaintiff has a history of bilateral medical patellar subluxation dating back to 1984, when he was injured during unit physical training in the Army. (Tr. 154-164).

Dr. Armacost (Tr. 418-423), who evaluated separately and in detail Plaintiff's: (1) degenerative joint disease of the lumbar spine (Tr. 419-420); and (2) bilateral degenerative joint disease of the knees (Tr. 420-421). Specifically, their reports detail that:

> "I had veteran do five flexion movements with his lumbar spine. After three repetitive movements of the flexion with the lumbar spine the veteran stopped secondary to pain and therefore he does have a positive DeLuca statement as repetitive movements of the lumbar spine causing an increase in pain so much that he was unable to do such examination. On examination, veteran does have tenderness of the right paravertebral region. There is also noted spasm of the musculature to that site. Veteran does have observed weakness of his lumbar spine . . . the veteran does have the noted antalgic gait secondary to his right knee condition."

(Tr. 421).

With respect to Plaintiff's knees, the record states:

> "There was pain noted with varus and valgus maneuvers bilaterally. Secondary to the increased pain the McMurray's test was not a valid test given the veteran's apprehension and pain. Also just with the range of motion of the right knee there was patellar grinding noted, much cracking and popping throughout any range of motion. I asked the veteran to do some deep knee bends to check for DeLuca criteria. Based on the severity of his righ knee condition, veteran is unable to do such an examination. Therefore, he does have a positive DeLuca statement. Any repetitive movement or resistant movements of his knees would bring about an increase in his pain."

(Tr. 422).

The report concludes:

> "Both the lumbar and the knee conditions do have a positive DeLuca criteria as any repetitive movement brings about an increase in his pain. When questioned about the functional capacity and any problems with occupation in regards to sedentary or physical labor, veteran at this time is *unemployable* due to his service connected injuries as he would be *unable to have a physical or a sedentary job due to his back and knee conditions.* Of note however the radiographic findings show only minimal arthritic changes in the past. His subjective findings *and exam findings* are much more severe than what the radiographic findings would suggest. Discussed with veteran that depression possibly is increasing his symptom severity."

(Tr. 423) (emphasis added). The findings illustrate that Plaintiff was observed by VA physicians to have symptoms so severe in terms of pain and restricted movements in his low back and knees that he was precluded from doing even sedentary work.

Defendant claims that the ALJ did, in fact, consider the VA's evidence noting that:

> "On physical examination in August 2006, the claimant ambulated from the waiting room to the examination with a noted persistent flexion of the right knee, which caused an antalgic gait. Sensation was intact in both lower extremities. Muscle strength was 5/5 and equal bilaterally. Deep tendon reflexes were 1+/4+ and equal bilaterally in patella and Achilles reflexes. There was no edema, no redness and no heat in the knees. The record contains the comment that radiographic findings did not show the severity presented on examination and subjectively."

(Exhibit 22F) (Doc. 16 at 11 *citing* (Tr. 418-423)).

However, the undersigned finds, and the record evidence indicates, that the ALJ expressly rejected the VA's determination by relying on selective portions of the report. Specifically, this Court finds that the ALJ took the VA's findings out of context in

reaching his conclusion. Accordingly, the record evidence fails to show that the ALJ considered the *entirety* of the record evidence.

Furthermore, pursuant to 20 CFR § 404.1527(d)(3),[7] Dr. Armacost supports his opinions with examinations and tests, while Drs. Cruz and McCloud only reviewed records[8] and did not have access to the August 2006 VA examinations. Furthermore, Dr. Armacost's opinions are consistent with the record as a whole and reflect a history of treatment for Plaintiff's back and knee problems. 20 CFR § 404.1527(d)(4). Additionally, the opinions of Dr. Armacost, a family medicine doctor and E.R. physician, are entitled to more weight than Dr. Cruz, a pediatrician, or Dr. McCloud, an orthopaedist. 20 C.F.R. § 404.1527(d)(5).[9] Dr. Armacost's opinion, that Plaintiff is incapable of even sedentary work due to his severe back and knee problems (Tr. 418-423), was therefore improperly discounted by the non-expert ALJ. *See Hall v. Celebreezze*, 314 F.2d 686, 690 (6th Cir. 1963).

---

[7] "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." *Id*.

[8] Drs. Cruz and McCloud reviewed Plaintiff's file in July 2006.

[9] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Id*.

The ALJ's failure to consider all of the medical evidence and adequately explain why he rejected the opinion of examining physicians in favor of consultative physicians constitutes reversible error. Therefore, the ALJ's nondisability finding is not supported by substantial evidence.

### III.

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d

966, 973 (6th Cir. 1985). Such is the case here.

Here, proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's medical history and his credible assertions of disabling conditions, as well as the extensive medical record of evidence of disability, and especially the credible opinions of Dr. Omoruyi and Dr. Armacost, Plaintiff's examining physicians, proof of Plaintiff's disability is overwhelming and opposing evidence is lacking in substance.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits beginning on July 7, 2003, should be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter should be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date: February 11, 2009            s/ Timothy S. Black
                                   Timothy S. Black
                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KENNETH W. STEWARD, : | Case No. 1:07-cv-1012 |
| : | |
| Plaintiff, : | Judge S. Arthur Spiegel |
| : | Magistrate Judge Timothy S. Black |
| vs. : | |
| : | |
| COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).